UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

MARY F. & VERNELL PATTON, JR.,

Chapter 13

Debtor.

Case No. 08-23038

---

In re

JOSEPHINA STEWART,

Chapter 13

Debtor.

Case No. 08-24709

---

In re

ANGELA D. MORAGNE,

Chapter 13

Debtor.

Case No. 07-28262

---

MEMORANDUM DECISION ON OBJECTIONS TO CONFIRMATION OF PLANS

---

Each of the above-captioned debtors, Mary and Vernell Patton, Josephina Stewart, and Angela Moragne, has filed a plan containing identical proposed language objectionable to their secured creditors, National City Real Estate Services, LLC, US Bank, NA, and Countrywide Home Loans, Inc., respectively. The objections are to plan provisions relating to the treatment of the home lenders' claims. There are no facts in dispute and all issues have been fully briefed by the debtors and creditors.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## ARGUMENTS

The debtors maintain that pursuant to 11 U.S.C. § 524(i), a creditor's willful failure to properly credit payments under a confirmed plan constitutes a violation of the injunction under section 524(a). The plans make use of section 524(i) by containing precise language directing how payments are to be applied. Specifically, the plans' proposed language provides that the payments will be applied and credited to the debtors' mortgage accounts as if the accounts were current and no prepetition defaults existed on the petition dates.

The creditors argue the subject plan provisions are inconsistent or in conflict with the terms of the mortgages. According to the creditors, the plan provisions impermissibly modify their secured liens in violation of 11 U.S.C. § 1322(b)(2).

## DISCUSSION

All of the plans contain the following language pertaining to the claims of the residential mortgage holders in the section entitled "Special Provisions":

> The debtor(s) specifically invokes and intends for these plan provisions to invoke and to reserve the debtor(s) [sic] rights under the provisions of 11 U.S.C. Section 524(i).
> 1. Postpetition Mortgage Payments. Payments received by holders and/or servicers of mortgage claims for ongoing postpetition installment payments shall be applied and credited to the debtors' mortgage account as if the account were current and no prepetition default existed on the petition date in the order of priority specified in the note and security agreement and applicable nonbankruptcy law. Postpetition installment payments made in a timely manner under the terms of the note shall be applied and credited without penalty.
> 2. Postpetition Payment Changes. Holders and/or servicers of mortgage claims shall make adjustments to the ongoing installment payment amount as required by the note and security agreement and applicable nonbankruptcy law, including changes based on an escrow analysis for amounts required to be deposited in any escrow account or based on an interest rate provision in an adjustable rate mortgage. Holders and/or servicers shall timely notify the debtors, of such payment adjustments and any shortage, deficiency or surplus of funds in any escrow account.

3. Prepetition Arrearages. Payments disbursed by the trustee to holders and/or servicers of mortgage claims shall be applied and credited only to the prepetition arrearages necessary to cure the default, which shall consist of amounts listed on the allowed proof of claim and authorized by the note and security agreement and applicable nonbankruptcy law. Holders and/or servicers of mortgage claims shall deem the prepetition arrearages as contractually current upon confirmation of the plan.

4. Mortgage Current upon Discharge. The holder and/or servicer of a mortgage claim shall provide to the debtors, a notice of any fees, expenses, or charges which have accrued during the bankruptcy case on the mortgage account and which the holder and/or servicer contends are 1) allowed by the note and security agreement and applicable nonbankruptcy law, and 2) recoverable against the debtors or the debtors' account. The notice shall be sent annually, beginning within 30 days of the date one year after entry of the initial plan confirmation order, and each year thereafter during the pendency of the case, with a final notice sent within 30 days of the filing of the trustee's final account under Bankruptcy Rule 5009. Unless the Court orders otherwise, an order granting a discharge in this case shall be a determination that all prepetition defaults with respect to the debtors' mortgage have been cured, and that the debtors' mortgage account is deemed current and reinstated on the original payment schedule under the note and security agreement as if no default had ever occurred.

Proposed Chapter 13 Plans § 11.

The debtors maintain that section 524(i) of the Bankruptcy Code authorizes inclusion of the plan provisions at issue. Section 524(i), a new subsection enacted by BAPCPA, provides that:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i). I am not persuaded that this subsection authorizes the proposed plan language at issue; it merely provides debtors with a post-discharge remedy in the event a creditor willfully fails to credit payments received under a confirmed plan. The statute, with the remedy

3

it provides, refers specifically to a violation of the injunction under 11 U.S.C. § 524(a)(2), which would not go into effect until after successful completion of the plan, but it has nothing to do with plan provisions. *See In re Anderson*, 382 B.R. 496, 503 (Bankr. D. Or. 2008); *In re Collins*, 2007 WL 2116416, *4 (Bankr. E. D. Tenn. July 19, 2007) (similar language). Likewise, the issue before the court is not whether or not the creditors violated section 524(i). The real issue is whether or not the plans, as proposed, are confirmable, so authorization – or prohibition – of such provisions must be found elsewhere.

The creditors rely on the Code provision that a plan may not modify the terms of a debt secured only by a mortgage on the debtor's principal residence. Section 1322(b)(2) of the Bankruptcy Code provides in relevant part: "[T]he plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's personal residence, ... or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). Additionally, section 1322(b)(5) allows debtors to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). Section 1322(e), in turn, provides that the amount necessary to cure a default is determined by the underlying agreement and nonbankruptcy law.

*Postpetition Mortgage Payments*.

This provision requires the creditors to override their regular payment application system of applying payments to the earliest installment due. The creditors have no objection to this provision and it is allowed. I concur that nothing in the Code prohibits such a provision in a

4

plan.

*Postpetition Payment Changes.*

This provision requires the mortgage creditors to service the loan in the customary manner as they would for homeowners outside of bankruptcy. The creditors have no objection to this provision and it is allowed. This merely affirms that the creditors will comply with their respective contracts. This plan provision also states that the debtors will be timely notified of payment adjustments and any shortfall or surplus in an escrow account. The notice requirement in no way affects the creditors' substantive rights and does not violate 11 U.S.C. § 1322(b)(2).

*Prepetition Arrearages.*

The final sentence in this provision requires the creditors to treat prepetition arrearages separately as contractually current upon confirmation of the plans. The creditors oppose this provision.

The bankruptcy court in *In re Collins*, 2007 WL 2116416, approved of such a provision:

> [A] provision requiring [the creditor] to "deem" the prepetition arrearage amounts contractually "current" as of confirmation is merely procedural and requires only that [the creditor] update its accounting procedures to ensure that the Debtors' account is not subject to any additional charges associated with any prepetition default. In other words, as of the date of confirmation, as long as the prepetition arrearage is provided for in the plan and payments are made as set forth therein, [the creditor] must, pursuant to § 1322(b)(5), divide the Debtors' mortgage into a "current" prepetition balance and a post-petition maintenance balance which, as of the date of confirmation, is, with respect to the arrearage claim, contractually "current." This provision addresses [the creditor's] *claims*, not its *rights*, and is not an impermissible modification under § 1322(b)(2).

*Id*. at *14; *see also In re Emery*, 387 B.R. 721 (Bankr. E.D. Ky. 2008) (objection to similar plan provision overruled).

The bankruptcy court in *In re Hudak,* 2008 WL 4850196, *4 (Bankr. D. Colo. Oct. 24,

5

2008), recently determined that similar plan language was an improper modification of the creditor's lien rights. The court noted that a loan can only be determined to be contractually current after, but not before, all prepetition arrearages have been paid; to deem a loan contractually current upon confirmation without qualifying language is premature and inconsistent with the Bankruptcy Code. *Id*. The *Hudak* court recognized the concern of the debtor to avoid the assessment of "junk" fees and noted, with approval, alternative language conditioning such "current" status upon successful completion of mortgage cure payments and regular monthly mortgage payments under the plan. *Id*. at *5.

I agree that the mortgage cannot be actually current until any prepetition default is cured and all postpetition payments that have come due are paid; but like the *Collins* and *Emery* courts, I interpret the word "deem" to mean that the debt is "treated as if" it were current for the purpose of assessing late fees or commencing foreclosure proceedings, not that the debt actually is current. This is not the precise dictionary definition of "deem," but it is close enough to allow such an interpretation in this context. The provision in the plans is allowed as interpreted by this court, but future plans might be less likely to draw objection if the provision stated that the mortgage holder upon confirmation would treat the debt as if it were contractually current for the purpose of assessing penalties or remedies, or words to that effect. Accordingly, this court is in sync with the more flexible interpretation of the of the *Collins* and *Emery* courts, as opposed to the more rigid interpretation of the *Hudak* court, and the provision is allowed.

*Mortgage Current Upon Discharge*.

This provision actually has two substantive ways in which the plans place a burden on the creditors. First, it attempts to address the lack of disclosure of postconfirmation fees by

mandating disclosure of those fees and providing parties with an opportunity to seek a court determination on the allowance of such fees. The creditors oppose this provision as impermissibly modifying the mortgages because neither the mortgage nor the Code require such an application in order for the creditor to be able to charge reasonable fees and expenses that the debtors have incurred during the pendency of the plan. However, many debtors have been surprised when no notice or demand was made for added fees while the plan was in effect, but when the demand came after completion of the plan and discharge, the debtors were unable to pay and sometimes faced foreclosure. Once the bankruptcy is over, a debtor has no forum in which to contest these charges, except to wait for the foreclosure. This is an expensive and dangerous way to bring the matter before a court to decide, for example, whether inspection fees are proper. *See, e.g., In re Jones*, 366 B.R. 584 (Bankr. E.D. La. 2007), *aff'd in part and rev'd in part*, 391 B.R. 577 (E.D. La. 2008); *In re Sanchez*, 372 B.R. 289 (Bankr. S.D. Tex. 2007).

Some creditors are hesitant to send notice of fees charged postpetition, such as inspection fees and bankruptcy related attorney fees, for fear this would be a violation of the automatic stay. They fear they might be subject to sanctions even though the fees are legitimate and provided for in the contract.

Several courts have attempted to construct a workable solution to the problem of providing sufficient notice to debtors of postpetition charges without running afoul of section 1322(b)(2). *See In re Watson*, 384 B.R. 697 (Bankr. D. Del. 2008); *In re Anderson*, 382 B.R. 496; *In re Hudak*, 2008 WL 4850196. Some jurisdictions even have local rules that address the matter. While there does not seem to be a concern with additional notice requirements, the plan should not impose affirmative duties upon creditors to protect their rights, which duties do not

7

otherwise exist under the applicable contract, nor under state or federal law.

I believe the same consideration that applies to a change in payments, discussed above, also applies to charging other fees.  The plan provision does not deny or, in any way, change the creditors' right to charge these fees; it merely establishes a procedure so the debtors know of the charge, and the debtors have a forum in which to object to the propriety of the fees around the time they are charged.  Giving the parties a forum to decide disputes does not change the substantive right to the charges.  The provision proposed by the debtors only requires an annual notice of these charges, which is not an unreasonable burden.  Such a notice requirement is unlike those challenged in *In re Collins*, 2007 WL 2116416, and *In re Anderson*, 382 B.R. 496, wherein the creditor had the burden to apply to the court for approval of postpetition charges.  The proposed notice requirement in the plans is allowed.

One cannot help but observe that failure to give the notice does not necessarily mean that the charges cannot be made or that they are waived.  Waiver would be inconsistent with the nonmodification provision of 11 U.S.C. § 1322(b)(2).  Creditors should not, however, be encouraged to fail to comply with the order of confirmation, as there could be consequences.

The creditors also oppose the second part of the provision, which automatically deems the mortgages current and reinstated upon discharge.  Similar language has been previously tested.  In *In re Anderson*, 382 B.R. at 508, language in the proposed chapter 13 plan indicated that, absent a court order otherwise, an order granting the debtors a discharge would be a determination that all prepetition and postpetition defaults on the debtors' home mortgages had been cured and that the debtors' mortgage accounts would be deemed current and reinstated as if no default had occurred.  This was rejected by the bankruptcy court.  The court found the

8

provision impermissibly put the onus on the secured creditors to obtain a court order to avoid the default rule created by the proposed plan. *Id*. at 508. *See also In re Hudak*, 2008 WL 4850196 at *4-5. While no similar rule is under consideration in this case, the reasoning is the same; such a provision impermissibly assumes at the time of discharge that the arrearage has been cured in full and no postpetition charges or regular payments to the secured creditor have been missed. It is possible that in the last few months of a plan, a creditor might not bring a default to the attention of the bankruptcy court with a motion for relief from stay, preferring instead to address the matter with the debtor or in state court later. Or the annual charge notification was less than a year before the discharge, and the creditor had to put forced-placed insurance on the property, or perhaps the debtor incurred late fees. This provision in the proposed plans is not allowed.

The debtors shall have thirty days to file amended plans consistent with this decision.

November 19, 2008

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court